UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

TOUR TECHNOLOGY SOFTWARE, INC.,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                            17-CV-5817 (MKB)

              v.

RTV, INC., JOHN DOES I-X, and JANE DOES
XI-XX,

                              Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Tour Technology Software, Inc. ("Tour Technology") commenced the above-

captioned action on October 4, 2017, against Defendant RTV, Inc. ("RTV"), alleging

infringement of United States Patent No. 6,754,400 (the "'400 Patent"), a system and technology

for rendering an image that enables, *inter alia*, an individual on a computer in a remote location

to explore a 360-degree virtual view of a setting as if the individual were at that setting.

(Compl., Docket Entry No. 1.)  After a discussion about the appropriate venue at a pre-motion

conference on February 13, 2018, Plaintiff filed an Amended Complaint on March 13, 2018,

adding Defendants John Does I-X and Jane Does XI-XX, photographers and customers,

respectively, of RTV, and allegedly residents of New York.  (Minute Entry dated Feb. 13, 2018;

Am. Compl., Docket Entry No. 18.)

Currently before the Court is RTV's motion to dismiss for improper venue pursuant to 28

U.S.C. § 1406(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, and for failure to

state a claim for willful infringement pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  (Not. of Mot. to Dismiss, Docket Entry No. 21; Mem. in Supp. of Mot. to Dismiss

("Def. Mem."), Docket Entry No. 21-1.)  Plaintiff opposes Defendant's motion.  (Pl. Mem. in

Opp'n to RTV's Mot. to Dismiss ("Pl. Mem."), Docket Entry No. 24.) For the reasons discussed below, the Court finds that venue is improper in the Eastern District of New York, and transfers this action with respect to Plaintiff's claims against RTV to the Western District of Michigan.

## I. Background

Plaintiff Tour Technology is a New York corporation, with operations in Huntington, New York. (Am. Compl. ¶ 1.) Defendant RTV is a Michigan corporation, based in Traverse City, Michigan.[1] (*Id.* ¶ 2.)

Plaintiff owns the '400 Patent, entitled "System and Method for Creation, Processing and Visualization of Omni-Directional Images."[2] (*Id.* ¶ 8.) The United States Patent and Trademark Office issued the '400 Patent on June 22, 2004. (*Id.* ¶ 24; '400 Patent, annexed to Am. Compl. as Ex. A, Docket Entry No. 18-1.)[3] The software-based technology underlying the '400 Patent enables an individual on a computer in a remote location to explore a 360-degree virtual view of an indoor or outdoor location, for example, an apartment, hotel room, restaurant, or backyard, "in

---

[1] The Court generally assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order. *See Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408, 2019 WL 418860, at *1 (E.D.N.Y. Feb. 1, 2019); *U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y.), *aff'd sub nom. McKeown v. Delaware Bridge Auth.*, 23 F. App'x 81 (2d Cir. 2001).

[2] On September 17, 2013, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate after receiving a Reexamination Request from the International Virtual Reality Photographers Association, alleging the unpatentability of the claims in the '400 Patent. (Am. Compl. ¶¶ 25, 27.) After reexamination of the '400 Patent, the majority of the claims were found to be patentable as amended, and new claims were "added and determined" to be patentable. (*Id.* ¶¶ 27–29; Ex Parte Reexamination Certificate 3, annexed to Am. Compl. as Ex. B, Docket Entry No. 18-2.) The Court's reference to the '400 Patent in this Memorandum and Order is to the '400 Patent as amended by the Ex Parte Reexamination Certificate.

[3] Because the exhibits to the Amended Complaint are not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

a manner . . . accepted by the viewer as substantially realistic."[4]  (Am. Compl. ¶¶ 9–10; '400

Patent 2.)  The '400 Patent generally protects a method for creating and generating photographic

images that are commonly used as online virtual tour images.

RTV presents, produces, and hosts 360-degree virtual tour content for clients.  (Am.

Compl. ¶ 32.)  The clients are alleged to be individuals and businesses in New York and other

states, "seeking to sell, rent, purchase, lease, and/or promote private residences, commercial real

estate, hotels, sporting and recreation facilities, schools, event venues, country clubs, golf

courses, upscale lodging facilities, restaurants, nightclubs, and healthcare facilities."  (*Id.*)  On its

website, RTV states that it "is a recognized leader in interactive 360 panoramic virtual tours,

professional photography services, and virtual tour software."  (RTV Recent Virtual Tours

webpage, annexed to Am. Compl. as Ex. C, Docket Entry No. 18-3.)  RTV's website also states

that it is a "leading provider of virtual tour technology," and offers virtual tour software for real

estate professionals and business entrepreneurs.  (About Real Tour Vision webpage, annexed to

Am. Compl. as Ex. D, Docket Entry No. 18-4.)  Plaintiff alleges that this constitutes

---

[4]  As set forth in the '400 Patent, the invention is summarized as follows:
> The creation, processing and visualization of omnidirectional
> images system of the present invention, gathers two plane
> complementary images, preferably captured with a digital
> camera endowed with a fish-eye lens having a 180 degree FOV open angle.
> The system reforms the hemi-spherical images associated with the
> planar images taken by the fisheye lens, using specific laws of
> projections, corrects the radial and geometrical distortions as well as
> the color and light distortions and assembles the images into a
> complete spherical image, which is projected on a cube.  Viewing
> of these images creates an impression of turning around in all the
> directions and of rectilinear movement in virtual space.  The
> impression created is very similar to the human eye perception of
> the tri-dimensional space, and it permits continuously or a
> successive visualization of some three-dimensional images
> including specific details that a user may want to examine closer.

('400 Patent 12.)

infringement of the '400 Patent.  (Am. Compl. ¶ 33.)

In support of its claims, Plaintiff contends that Defendants use the patented technology to produce photographic images for virtual tours, host those images on the Internet, and/or use those images in sales and marketing activities.  (*Id.* ¶ 35.)  In particular, Plaintiff alleges that the virtual tour images that appear on the RTV website "indicate that the images are generated by the projection of a spherical image onto faces of a cube or a process equivalent thereto,[5] where the spherical image was generated by the combination of multiple images," (*id.* ¶ 58), and that Defendants are thus "literally and/or under the doctrine of equivalen[ts], directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '400 Patent in the State of New York," (*id.* ¶ 34).

Plaintiff alleges that RTV has a "local presence" in the Eastern District of New York, and that the John Doe photographers are employee photographers of RTV.  (*Id.* ¶¶ 37–41, 49–51.) Specifically, Plaintiff alleges that John Does "are photographers resident in this [d]istrict and/or working within this [d]istrict" and "employed by RTV in the business of creating images configured to be used in infringing the patent in suit and are practicing the invention which is the subject matter of the patent in suit."  (*Id.* ¶ 3.)  Plaintiff also contends that the John Doe Defendants use process steps in their photography for RTV that are covered under the claims of the '400 Patent, including "capturing images surrounding an origin point in at least two hemispheres surrounding the origin point," and "assembling the images in a digital format to create a complete spherical image surrounding the origin point."  (*Id.* ¶ 47.)

In addition, Plaintiff alleges that Jane Does are customers of RTV and "are commercial

---

[5]  The '400 Patent covers "[a] method for digitally rendering omni-directional images comprising of the steps of: . . . assembling . . . images in a digital format to create a complete spherical image . . . [and] projecting the spherical image onto faces of a . . . cube."  (Ex Parte Reexamination Certificate 2, Claim 1.)

4

enterprises practicing the invention in connection with their businesses located in and/or operating in this [d]istrict" and "include real estate agents advertising, using the technology of the invention, homes for sale and rent in this [d]istrict, and hotel and hospitality facilities located in this [d]istrict and advertising, using the technology of the invention, rooms available for occupancy by guest-customers." (*Id.* ¶ 4.)

## II. Discussion

### a. Standard of review

A plaintiff bears the burden of establishing that venue is proper once venue is challenged. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *CDx Diagnostic. Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669, 2018 WL 2388534, at *1 (S.D.N.Y. May 24, 2018). However, at the motion to dismiss stage, where the court relies only on pleadings and affidavits, a "plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alteration in original) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990))). In determining whether a plaintiff has made a *prima facie* showing, a court "view[s] all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007); *Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, No. 17-CV-147, 2018 WL 4863589, at *3 (E.D.N.Y. Oct. 5, 2018). When faced with a motion to dismiss for improper venue, district courts may consider facts outside the pleadings. *See Uni-Sys., LLC*, 2018 WL 4863589, at *6; *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725, 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018); *Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, No. 11-CV-

5875, 2013 WL 80181, at *4 (E.D.N.Y. Jan. 2, 2013); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010) ("In deciding a motion to dismiss pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3), a court may consider evidentiary matters outside the pleadings, 'by affidavit or otherwise,' regarding the existence of jurisdiction." (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), and *aff'd in part*, 435 F. App'x 31 (2d Cir. 2011).

The Court considers the Amended Complaint, and the declarations and exhibits attached to the Amended Complaint and in support of the parties' memoranda. *See, e.g.*, *TradeComet.com LLC*, 693 F. Supp. 2d at 375 n.3 (stating that the court would consider declarations and their attachments in deciding a Rule 12(b)(3) motion to dismiss).

### b. Plaintiff has not made a *prima facie* showing that venue is proper for RTV

In patent infringement actions, venue is exclusively governed by 28 U.S.C. § 1400(b) ("section 1400(b)"). *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, --- U.S. ---, ---, 137 S. Ct. 1514, 1519 (2017) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)). Proper venue under section 1400(b) is considered "an issue unique to patent law," and thus governed by Federal Circuit law instead of Second Circuit law. *See In re ZTE*, 890 F.3d at 1012 (citation omitted). Under section 1400(b), a civil action for patent infringement may be brought in a judicial district where (1) "the defendant resides," or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Thus, a plaintiff in a patent infringement action may either make a *prima facie* showing that the defendant resides in the judicial district where the plaintiff filed, or that the defendant has committed acts of infringement and has a regular and established place of business in that district. "[C]ourts should be 'mindful that patent venue is narrower than general venue — and intentionally so.'" *Zaxcom*, 2019 WL 418860, at *3 (quoting *Peerless Network*, 2018 WL

1478047, at *2).

For the reasons explained below, the Court finds that Plaintiff cannot satisfy either prong under section 1400(b) — RTV neither resides in, nor has a regular and established place of business in the Eastern District of New York.

### i. Lack of residence

Venue is proper under the first prong of section 1400(b) in a judicial district where the defendant resides. 28 U.S.C. § 1400(b). In 2017, the Supreme Court clarified that when the defendant is a domestic corporation, "residence" under section 1400(b) refers to the state of incorporation. *TC Heartland LLC*, 137 S. Ct. at 1521.

According to RTV's founder, "RTV is a Michigan corporation with its place of business at 400 E Eighth Street, Suite 2, Traverse City, Michigan 49686." (Jason LaVanture Decl. ("LaVanture Decl.") ¶ 2, Docket Entry No. 21-2.) Plaintiff does not dispute that RTV does not reside in this [d]istrict. (Am. Compl. ¶ 2 ("On information and belief, [RTV] is a Michigan business corporation.").) Plaintiff therefore cannot satisfy the residency prong of section 1400(b). Thus, Plaintiff cannot assert venue in this district under this provision of the venue statute.

### ii. Plaintiff has not sufficiently alleged that RTV engaged in acts of infringement and has a regular and established place of business in this district

Although RTV does not reside in the Eastern District of New York, venue may nevertheless be proper under the second prong of section 1400(b) if Plaintiff makes a showing that RTV has committed acts of infringement *and* has a regular and established place of business in this district. 28 U.S.C. § 1400(b).

### 1. Acts of infringement

To satisfy this prong, a plaintiff must make a *prima facie* showing that the alleged acts of infringement occurred in the district. *See W. View Research, LLC v. BMW of N. Am., LLC*, No. 16-CV-2590, 2018 WL 4367378, at *5 n.2 (S.D. Cal. Feb. 5, 2018) ("[A]llegations of infringement are sufficient for a venue determination" (citation omitted)); *Funnelcap, Inc. v. Orion Indus., Inc.*, 392 F. Supp. 938, 943 (D. Del. 1975) ("[C]ourts have consistently held that an allegation of infringement is itself sufficient to establish venue . . . ."); *see also CDx Diagnostic*, 2018 WL 2388534, at *2 (finding acts of infringement satisfied where Defendant conceded "that it sold the allegedly infringing products in th[e d]istrict"). Whether a patent has been infringed "is a question to be determined at trial. 'The issue of infringement is not reached on the merits in considering venue requirements.'" *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (brackets omitted) (quoting *Gunter & Cooke, Inc. v. S. Electric Serv. Co.*, 256 F. Supp. 639, 648 (M.D.N.C. 1966), *aff'd* 378 F.2d 60 (4th Cir. 1967)); *see also Zaxcom*, 2019 WL 418860, at *4 ("Whether [a d]efendant has infringed [the patent] is a factual question not appropriate for resolution on a motion to dismiss for improper venue." (citing *Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1350 (Fed. Cir. 2018))).

With regard to RTV's general conduct, Plaintiff alleges, *inter alia*, that: "RTV is in the business of presenting, producing, and/or hosting 360° virtual tour content for its clients"; it "offers for sale [in the Eastern District of New York] an array of virtual tour software which uses spherical projection technology"; it provides "training to photographers located in the [d]istrict"; has a local presence via "specialized equipment located in th[e Eastern] District [of New York] and used to practice the invention" by the photographers RTV contracts with; "RTV . . . implements the production of photography using its local employee-photographers"; and the images taken by the photographers that RTV contracts with to do work are "processed in a

manner consistent with the practice of the invention" at times via "equipment . . . [that is] shipped into this [d]istrict by Defendant RTV."[6] (Am. Compl. ¶¶ 32–33, 38–39, 41, 48.) As to the infringing acts, Plaintiff alleges that Defendants are infringing the '400 Patent by "operating, controlling, using and/or benefitting from [these] activities." (*Id.* ¶ 34.)

Based on these allegations, the Court finds that Plaintiff has made a *prima facie* showing of acts of infringement in the Eastern District of New York. *See Zaxcom*, 2019 WL 418860, at *4 (finding sufficient "[p]laintiff's allegations that [d]efendant 'has sold products and committed infringing acts in this district by offering for sale and selling [the PDR and related accessories]' through distributors in the district . . . and by using these products in demonstrations in the district." (citations omitted)); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 928 (E.D. Va. 2017) (finding the acts of infringement requirement met where "employees of the three Virginia Lego Store locations have tested, detected, and processed QR codes imprinted on the company's advertisements and packaging," where the patents at issue related to QR codes); *see also Gunter & Cooke*, 256 F. Supp. at 648 ("The acts of infringement required to support venue in a patent infringement action need not be acts of direct infringement, and venue does lie if the defendant only induced the infringement or contributed to the infringement.").

## 2. Regular and established place of business

There are three requirements relevant to a determination of whether a defendant has a regular and established place of business in a judicial district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). "If any . . .

---

[6] Plaintiff further alleges that "Defendants are in the business of producing photographic images for virtual tours," and "Defendant RTV . . . provides its clients with production, content, management, hosting and content distribution services," and "services many properties at any given time throughout New York." (Am. Compl. ¶ 35.)

requirement is not satisfied, venue is improper under § 1400(b)." *Id.*

Prior to the Supreme Court's recent decision in *TC Heartland*, in 1990, the Federal Circuit determined that a 1988 amendment to the general venue statute incorporated the provisions of the patent venue statute into the general venue statute. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578–80 (Fed. Cir. 1990). As a result, between the 1990 Federal Circuit decision and the Supreme Court's decision in *TC Heartland*, courts often determined the proper venue in a patent infringement action by examining whether a corporate defendant effectively resided in any district in which it was subject to personal jurisdiction, pursuant to the general venue statute. In 2017, the Supreme Court in *TC Heartland* reversed the Federal Circuit's 1990 decision, finding that a corporate defendant only resides in its place of incorporation — as opposed to any district where the defendant is subject to personal jurisdiction. *See TC Heartland*, 137 S. Ct. at 1520–21. The Court reasoned that the 2011 amendments to the general venue statute clarified that Congress never intended to supplant or alter section 1400(b) with the general venue statute. *See id.*; *see also CDx Diagnostic*, 2018 WL 2388534, at *2. As the Federal Circuit stated in *In re Cray Inc.*, 871 F.3d 1359, "for nearly . . . 30 years, venue in patent infringement cases ha[d] largely turned on whether a defendant 'resides' in the district in question. Following the Supreme Court's recent decision in *TC Heartland*, litigants and courts are raising with increased frequency the question of where a defendant has a 'regular and established place of business.'"[7] *In re Cray*, 871 F.3d at 1359. When "deciding whether a defendant has a regular and established place of business in a district,

---

[7] Because *TC Heartland* returned the corporate residency standard back to what it had been prior to the Federal Circuit's 1990 decision, case law prior to the Federal Circuit's decision in 1990 is still largely relevant for the purposes of analyzing whether a defendant has a "regular and established place of business" in a district. The Court therefore looks to case law prior to 1990, and after *TC Heartland*, to assist in its assessment of whether RTV maintains a "regular and established place of business" in this district.

no precise rule has been laid down and each case depends on its own facts." *Id.* at 1362.

### A. There is a physical place in the Eastern District of New York

Plaintiff argues that RTV has "stated that it is a local virtual tour company operating from various towns in" this district, and that the "locations used by" the John Doe photographers "are the Defendant's place of business" in the district. (Pl. Opp'n 18; *see also* Am. Compl. ¶ 37 ("local presence of Defendant RTV includes employee-photographers (the John Doe Defendants)").) In addition, Plaintiff argues that "RTV acknowledges that it deals directly with customers" in the district and "implements the production of photography by photographers present" in the district. (Pl. Opp'n 6.) Plaintiff also alleges that RTV admits that "the photographers have 'office space'" in the district, (*id.* at 7), as well as "specialized equipment" that is "used to practice the invention by the John Doe Defendants as Employee Photographers of Defendant RTV," (Am. Compl. ¶ 39). Plaintiff contends that RTV ships the equipment to the district. (*Id.*)

RTV argues that the Court should dismiss the Amended Complaint, at least as to RTV, because:

> it has no physical place of business in New York . . . [and] does not rent or own any property in New York. It has no full or part time employees, sales representatives or other agents who live or work in New York and does not send any of its employees, representatives, or agents to New York. It is not registered to do business in New York, has no registered agent of service in New York, no New York phone number, and no New York bank account.

(Def. Mem. 2–3; *see also id.* at 4.) RTV acknowledges that it "engage[s] various independent photographers for various projects," (*id.* at 7), but disputes that the photographers it contracts

11

with are RTV employees,[8] (*see id.* at 9), and argues that "[t]he location of [these] independent

contractors engaged by RTV is not relevant to considerations of venue," (*id.* at 8 (citing *In re*

*Cray*, 871 F.3d at 1363 and *Talsk Research Inc. v. Evernote Corp.*, No. 16-CV-2167, 2017 WL

4269004, at *4 (N.D. Ill. Sept. 26, 2017)).)

In determining whether there is a physical place in the district, the Federal Circuit has

explained that:

> While the "place" need not be a "fixed physical presence in the sense
> of a formal office or store," *Cordis*, 769 F.2d at 737, there must still
> be a physical, geographical location in the district from which the
> business of the defendant is carried out. In *Cordis*, for example, a
> defendant used its employees' homes to store its "literature,
> documents and products" and, in some instances, like distribution
> centers, storing inventory that the employees then directly took to
> its clients. 769 F.2d at 735. Defendant also engaged a secretarial
> service physically located in the district to perform certain tasks. *Id.*

*In re Cray*, 871 F.3d at 1362. The Federal Circuit also clarified that the "[p]lace" cannot "refer

merely to a virtual space or to electronic communications from one person to another." *Id.*

Instead, it is "a location where, for example, products are made, customers are served, or

business decisions are made." *Peerless Network*, 2018 WL 1478047, at *4.

Offices, including home offices, of employees and sales representatives, have been found

to be sufficient under certain circumstances to satisfy the "place in the district" requirement.

---

[8] Plaintiff and RTV debate at length whether the John Doe Defendant photographers are employees or independent contractors. Because the nature of RTV's relationship with the John Doe photographers is not a significant factor in the Court's decision on venue, the Court declines to decide the issue. *See, e.g.*, *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 550 (S.D.N.Y. 2018) (analyzing whether any "employee, *independent contractor*, or agent" resided in the relevant district (emphasis added)); *Sherman Paper Prod. Corp. v. Sorg Paper Co.*, 161 F. Supp. 44, 45 (E.D. Mich. 1958) ("Defendant stresses the fact that the Protect-O-Pac Sales and Engineering Co. was not its employee but an independent distributor. Technical distinctions should not obscure the practical effects of corporate activity. The nature of the employment relationship between it and its agent is not a significant difference upon which to base or deny venue.").

*See, e.g.*, *Zaxcom*, 2019 WL 418860, at *4 (finding the physical place requirement satisfied for an employee who maintained a home office and storage area, where he kept "various equipment used . . . to discharge his responsibilities"); *id.* (finding the requirement satisfied for an electronics repair business that the defendant contracted with to serve as a service center for defendant's products, where the repair business was located in the district); *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018) (finding the physical place requirement satisfied despite defendant's argument that it had "no real property, warehouses, storage facilities, office spaces, post boxes, showrooms, leased property, or rental property within the State of New York," where a single employee worked out of a home office in the Southern District of New York, had a New York telephone number, and defendant's sale territory covered New York).

Plaintiff has made a *prima facie* showing of this factor. RTV's argument that it does not have a physical location in this district in part because it "does not rent or own any property in New York," (Def. Mem. 7), is not determinative. The Court in *In re Cray* explained that the "place" requirement is satisfied if there is a "physical, geographical location in the district from which the business of the defendant *is carried out*." *In re Cray*, 871 F.3d at 1362 (emphasis added); *see also RegenLab USA*, 335 F. Supp. 3d at 550 ("Once [defendant] ships the products from its office in Texas, the representative conducts an initial demonstration session at the customer's location. The fact that other business, such as shipping, payment and processing, follow-on orders, and addressing customer feedback, is handled out of Texas does not negate the business that is occurring at home offices in New York." (citations, internal quotation marks, and brackets omitted)); *Peerless Network*, 2018 WL 1478047, at *4 ("It is a location where, for example . . . customers are served . . . .").

As set forth in the pleadings, exhibits, and affidavits, RTV's business is carried out from

multiple physical places in the district. Part of RTV's business is carried out by providing professional photography services. (*See* LaVanture Decl. ¶ 8 ("One service provided by RTV is to help its customers obtain pictures of given locations for use in virtual tours.").) RTV's website specifies that it "maintain[s] a vast network" of "full-service providers." (Tour Software for Brokers & Agents webpage 2, annexed to Pl. Opp'n as Ex. D, Docket Entry No. 25-3.) When a customer signs up with RTV to utilize its virtual tour software, RTV connects a local virtual tour provider to the customer's account. (*Id.* ("[W]hen you sign up with RTV, a local professional virtual tour provider will be assigned to your account so you can order the stunning virtual tour productions as shown in our virtual tour gallery.").) Customers can order local virtual tours and professional photography services through RTV's website. (*See, e.g.*, Screenshot of main RTV webpage, annexed to Pl. Opp'n as Ex. E, Docket Entry No. 25-4.) Several of these virtual tour providers, which RTV describes as its "representatives," are located in this district. (*See, e.g.*, Bellmore NY Virtual Tour webpage, annexed to Pl. Opp'n as Ex. F, Docket Entry No. 25-5; Huntington NY Virtual Tour webpage, annexed to Pl. Opp'n as Ex. G, Docket Entry No. 25-6.) These local tour providers are carrying out RTV's business, and at least some of these tour providers appear to maintain a physical location in the district. RTV admits that it "pays for the photo services from the photographers it engages on a project-by-project basis." (LaVanture Decl. ¶ 15.)

In addition, and as noted above, offices of employees and sales representatives can satisfy the place requirement, contrary to RTV's argument that "the physical location at issue cannot be 'a place of the defendant's employee,' or a place of the defendant's independent contractor." (Def. Mem. 7 (first citing *In re Cray*, 871 F.3d at 1363; and then citing *Talsk Research*, 2017 WL 4269004, at *4).)

RTV cites *Talsk Research* to support its argument that "[t]he Federal Circuit's decision

in [*In re*] *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this [d]istrict constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)." *Talsk Research*, 2017 WL 4269004, at *4. RTV's reliance on *Talsk Research* is misplaced as *Talsk Research* is factually distinguishable. In *Talsk Research*, the agreement between the defendant and the "independent contractors" expressly stated that the group members at issue in fact were not independent contractors, and further, that the group at issue was comprised of "Community Members," that the defendant financially incentivized to recommend its products. *Id.* at *3. Unlike the "independent contractors" in *Talsk Research*, RTV hired the John Doe Defendant photographers in this case to perform actual professional services as opposed to simply provide recommendations.

The Court finds that the use of photography providers that maintain locations within the Eastern District of New York and relied on by RTV to service its customers in the district sufficiently supports a finding that RTV carries out its business from a physical place in this district. *See In re Cray*, 871 F.3d at 1362 (citing a case where it was held sufficient that "[d]efendant . . . engaged a secretarial service physically located in the district to perform certain tasks.").

## B. RTV has a regular and established place of business in the district

"A business may be 'regular[]' . . . if it operates in a steady, uniform, orderly, and methodical manner. In other words, sporadic activity cannot create venue." *Id.* (citations, internal quotation marks, and brackets omitted). "The 'established' limitation . . . directs that the place in question must be settled certainly, or fixed permanently." *Id.* at 1363 (citation, internal quotation marks, and brackets omitted).

The facts support a finding that RTV's business is regular and established in this district. RTV's website states that it is "a recognized leader in interactive 360 panoramic virtual tours, professional photography services, and virtual tour software." (RTV Recent Virtual Tours webpage.) It "guarantees full coverage" in locations in this district. (*See* Bellmore NY Virtual Tour webpage; Huntington NY Virtual Tour webpage.) Because RTV guarantees full coverage in locations in this district, its contracts with photographers that reside in the district are not accidental, but by design to ensure that it can provide services to customers with regularity, and in an established manner. *See RegenLab USA*, 335 F. Supp. 3d at 550 (noting that the defendant's "employees have not merely worked out of the New York offices by happenstance," where defendant shipped sales orders into the district and the representative carried out initial demonstration sessions at the customer's location, and concluding that "[t]he fact that other business, such as shipping, payment and processing, follow-on orders, and addressing customer feedback, is handled out of Texas does not negate the business that is occurring at home offices in New York." (internal citation omitted)).

## C. The regular and established place is not the place of RTV

Plaintiff argues that "RTV has ratified the conceded office space . . . as its own, by announcing the location, here in the [d]istrict, on its website, characterizing itself as a Glen Cove, New York virtual tour company." (Pl. Opp'n 17 (citations omitted); *see also id.* at 18 ("locations used by the Defendant photographers are [RTV's] place of business in this [d]istrict by ratification.").)

RTV argues that even if the photographers are RTV's employees, it is insufficient "to find venue because there is no *physical place of RTV* in this district." (Def. Reply Mem. in Supp. of Mot. to Dismiss ("Def. Reply") 1, Docket Entry No. 27.) RTV emphasizes that the

16

"photographers are responsible for obtaining their own office facilities and applicable insurance" and that RTV "does not rent or own any property in New York" and "does not make payments to the photographers it engages for expenses 'including rent or mortgage payments and insurance.'" (*Id.* at 2 (citing LaVanture Decl. ¶¶ 4, 15).) RTV's founder states that "RTV maintains a network of independent contractor third party photography service providers around the country . . . . and acts as a conduit and referral service to a network of separate professional photographer service providers," and the photographers "each runs their own business wholly separate from RTV." (LaVanture Decl. ¶¶ 8–9.) RTV's founder also states that the photographers are "largely free" to provide photography services to others, and "RTV imposes no requirements on where photographers should live or maintain their business," and only requires that the photographers are "willing to go to take pictures" in certain locations. (*Id.* ¶¶ 17–18.) RTV further argues that its inventory "is stored only in RTV's facility in Michigan. Hardware is directly shipped from RTV's office in Michigan." (*Id.* ¶ 24.)

The third *In re Cray* requirement is that the regular and established place of business must be "a place *of the defendant*." *In re Cray*, 871 F.3d at 1363. "Thus, the defendant must establish or ratify the place of business. It is not enough that [an] employee does so on his or her own." *Id.* As discussed in *In re Cray*:

> Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place. One can also recognize that a small business might operate from a home; if that is a place of business of the defendant, that can be a place of business satisfying the requirement of the statute. Another consideration might be whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place. Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business.

*Id.* (citations omitted). Relevant inquiries also "include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id.* at 1363–64. However, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* at 1364.

As set forth *supra*, RTV targets customers in the district by holding itself out as servicing the district. RTV's website represents that it has "a representative" in various locations within the district, and provides RTV's main number for the purpose of securing a virtual tour with those representatives. (*See, e.g.*, Bellmore NY Virtual Tour webpage; Huntington NY Virtual Tour webpage.) These representations are relevant to this factor's inquiry, *see In re Cray*, 871 F.3d at 1363–64, and appear to contradict RTV's statement that RTV "has no full or part time employees, sales representatives or other agents who live or work in New York," (LaVanture Decl. ¶ 7).

Nevertheless, the Court finds that the virtual tour and photography service providers are stand-alone entities that operate separate from and not pursuant to the direction of RTV. The facts proffered by RTV weigh in favor of a finding that the offices or locations of the photographers are not the place of RTV. *See, e.g.*, *Zaxcom*, 2019 WL 418860, at *5 (finding that an employee's home office was not the place of the defendant where employment was, *inter alia*, not conditioned on continued residence in the district, and the employee did not receive allowance for rent for his home office, but was required to service customers and dealers in a certain territory); *id.* (finding that a repair service center that the defendant contracted with was not the place of the defendant where either party could terminate the agreement between them at will and the service center was not restricted to working on defendant's projects); *see also In re Cray*, 871 F.3d at 1363 ("[I]f an employee can move his or her home out of the district at his or

18

her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant."); *but see RegenLab USA*, 335 F. Supp. 3d at 552 (finding employees' home to be place "of the defendant" where employees used sales kits to conduct demonstrations at customers' homes despite the fact that defendant did not rent or exercise control over its employees' work places and did not mandate that employees reside in a specific area, nor did defendant provide support service in the district, where defendant solicited sales people to cover New York).

While several of RTV's webpages arguably blur the lines between RTV and the virtual tour providers by stating that it has "representatives" in a desired location, other RTV webpages specify that the virtual tour companies, or photographers, that RTV contracts with and holds out as its "representatives," are locally owned operators that maintain some level of separation from RTV. (*See, e.g.*, RTV order form webpage 4, annexed to Pl. Opp'n as Ex. C, Docket Entry No. 25-2 ("Because our virtual tour providers are locally owned and operated, each offers services based on local demand and sets their own pricing."); RTV tour software webpage 2, annexed to Pl. Opp'n as Ex. D, Docket Entry No. 25-3 ("All RTV providers maintain their own local photography and virtual tour company and establish their pricing structures.").) Even on the webpages that Plaintiff cites most frequently, which webpages suggest that RTV has representatives in the Eastern District of New York, those webpages refer to the representatives as being part of a "virtual tour provider network" that RTV has "built up." (*See, e.g.*, Huntington NY Virtual Tour webpage.) These same pages also invite customers to click on a link to, "Learn About *This* Huntington NY Virtual Tour Company," (*id.*), which, when considered with the other webpages specifying that such providers are locally owned, indicates a level of separation from RTV.

These webpages suggest that rather than maintaining a place in the Eastern District of

New York from which it conducts its regular and established business, RTV instead maintains a large network of photography service providers that exist as entities outside the control of RTV, and suggests a level of separation formalized through a contractual agreement. *See, e.g.*, *AGIS Software Dev., LLC v. ZTE Corp.*, No. 17-CV-0517, 2018 WL 4854023, at *3 (E.D. Tex. Sept. 28, 2018) (finding that a call center physically located in the district that was established by the defendant for the purpose of providing support to defendant's customers, which housed defendant's employees, did not constitute a place of the defendant because the plaintiff did not show how the defendant controlled the work conducted at the call center or how the relationship was "more intimate" than an arms-length contractual relationship); *cf. Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 17-CV-0418, 2018 WL 4849345, at *8 (E.D. Tex. Sept. 6, 2018) (finding that BMW had "undoubtedly . . . ratified" its dealerships as places of BMW where, *inter alia*, "the dealerships [were] *named* 'BMW,'" and the dealerships displayed "the singular logo of BMW with no reservations such as 'authorized dealer' or 'exclusive distributor'" (emphases in original)).

Although RTV's actions and contacts within the district would likely be sufficient to satisfy the general venue statute, the Court is mindful that the patent venue statute is narrower. *In re Cray*, 871 F.3d at 1361 ("Courts should be mindful of [the] history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases."); *RegenLab USA*, 335 F. Supp. 3d at 548 ("[C]ourts should be 'mindful that patent venue is narrower than general venue — and intentionally so.'" (quoting *Peerless Network*, 2018 WL 1478047, at *2 (citation omitted))). Accordingly, the Court finds that the level of separation between RTV and the John Doe Defendant photographers is too attenuated to support a finding that any place of a virtual tour provider or photographer has in fact been ratified by RTV as the

place of RTV.[9]

Plaintiff has therefore not met its burden to make a *prima facie* showing that venue is proper under section 1400(b) as to Defendant RTV.

### c. Transfer is appropriate

Under 28 U.S.C. § 1406(a), where an action is subject to dismissal as improperly venued, the court must decide whether to dismiss the action or, if it is in the interest of justice, to transfer the action to a venue "in which it could have been brought." 28 U.S.C. § 1406(a). The decision "whether to dismiss or transfer a case 'lies within the sound discretion of the district court.'" *Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted) ("Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice."). "A court may transfer a case pursuant to 28 U.S.C. § 1406(a) *sua sponte* even if the defendant moves only to dismiss." *Pisani v. Diener*, No. 07-CV-5118, 2009 WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) (internal citations omitted.); *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05-CV-6939, 2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006) (citing *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 372 n.3 (2d Cir. 1966)).

The Court transfers the claims against Defendant RTV to the Western District of Michigan, where RTV resides. Although dismissal rather than transfer is encouraged when a case is a "sure loser," *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011), or "clearly doomed," *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005), the Court cannot

---

[9] Although Plaintiff names Jane Doe Defendants, the arguments made as to these Defendants are sparse, and the Court similarly finds that any facts proffered regarding these Defendants are too attenuated to support a finding that the third *In re Cray* requirement has been met.

conclude that there is no merit to Plaintiff's claims. *See Int'l Flavors & Fragrances Inc. v. Van Eeghen Int'l B.V.*, No. 06-CV-0490, 2006 WL 1876671, at *8 (S.D.N.Y. July 6, 2006) ("Dismissal is a harsh remedy that is best avoided when another avenue is open."). As acknowledged by RTV, Plaintiff has already settled several of the cases it has filed for infringement of the '400 Patent. (Def. Mem. 1.) In addition, Plaintiff survived a request for reexamination from the International Virtual Reality Photographers Association, and the majority of the claims of the '400 Patent were found to be patentable as amended. (Am. Compl. ¶¶ 25, 27; Ex Parte Reexamination Certificate 3.)[10]

### d. Venue as to the claims against John and Jane Does

RTV argues that according to its knowledge, the John and Jane Doe Defendants "have not . . . been served or retained counsel and have not had an opportunity to address deficiencies in the complaint," but that "[n]evertheless, the claims against them in the Amended Complaint appear deficient." (Def. Mem. 18.) RTV appears to argue that Plaintiff has not sufficiently alleged claims against the John and Jane Doe Defendants — highlighting that it is unclear whether John and Jane Doe Defendants are alleged to be direct, induced, or contributory infringers. (*Id.* at 18–19.)

The Court declines to decide whether Plaintiff has failed to state claims against the John and Jane Doe Defendants as those individuals have not been identified or served. Plaintiff is ordered to inform the Court within thirty (30) days of this Memorandum and Order how it

---

[10] The Court does not make any finding as to the merits of Plaintiff's claims, and in light of the Court's conclusion that venue is improper, has not reached Defendant RTV's request to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim of willful patent infringement. *See, e.g., Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725, 2018 WL 1478047, at *5 n.4 (S.D.N.Y. Mar. 26, 2018) (finding improper venue and transferring the case in the interest of justice, and subsequently not reaching the defendant's motion to dismiss pursuant to, *inter alia*, Rule 12(b)(6)).

intends to proceed with respect to the John and Jane Doe Defendants.

In patent infringement actions, venue must be established individually as to each defendant named in the action. *See, e.g.*, *Magnacoustics, Inc. v. Resonance Tech. Co.*, No. 97-1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants[,] venue and jurisdiction requirements must be met as to *each defendant*." (citation omitted)).

Based on the allegations in the Amended Complaint, it does not appear that Plaintiff can establish venue in the Western District of Michigan for the John and Jane Doe Defendants. As discussed *supra*, Plaintiff alleges that the John Doe Defendants maintain residency in the Eastern District of New York. Similarly, the Jane Doe Defendants are alleged to be customers of RTV that reside in the Eastern District of New York. (*See* Am. Compl. ¶ 3.) In addition, Plaintiff does not allege any facts to suggest that the John or Jane Doe Defendants have a regular and established place of business in the Western District of Michigan. The Court therefore cannot transfer the action with respect to the John and Jane Doe Defendants, and can only transfer the action with respect to RTV.[11] *See RegenLab USA LLC*, 335 F. Supp. 3d at 548–49 ("Whether or not the entities were working together, they are different companies and thus must both be subjected to individual venue analyses." (citation omitted)).

---

[11] While the Court finds this outcome troubling and notes that under the general venue statute and in the interest of justice, the Court would transfer the action as to all Defendants to the Western District of Michigan, the Court is compelled by the patent venue statute, section 1400(b), to only transfer the action as to RTV, because venue requirements have not been met for the John and Jane Doe Defendants in the Western District of Michigan. *See, e.g.*, *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV-H-17-3258, 2018 WL 1811354, at *3 (S.D. Tex. 2018) ("Wet Sounds argues that venue is proper in this district because of the defendants' jointly infringing acts . . . . The problem is that venue must be proper as to each defendant, and it is not proper as to PowerBass. Under these circumstances, the court may not retain venue as to that defendant, even if judicial economy would support that.").

Plaintiff must inform the Court within thirty (30) days of the date of this Memorandum and Order as to how it would like to proceed given the transfer of claims against RTV, i.e., whether Plaintiff intends to withdraw its claims against the remaining John and Jane Doe Defendants or to amend the Amended Complaint and proceed as to these Defendants.

**III. Conclusion**

For the foregoing reasons, the Court transfers the action with respect to Plaintiff's claims against RTV to the Western District of Michigan. The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to inform the Court whether it wishes to proceed or withdraw its claims against John Does I-X and Jane Does XI-XX.

Dated: March 27, 2019
      Brooklyn, New York

                         SO ORDERED:


                         _____s/ MKB_____
                         MARGO K. BRODIE
                         United States District Judge